CASE No. 836.

*EX PARTE* FARRARS, *IN RE* GARRETT v. DIAL.

1. Where a decree ascertained that certain moneys, with interest, were in the hands of an assignee for the benefit of creditors, and applicable to a debt admitted in the pleadings, and it was referred to the commissioner of the court to add the several sums together, with the interest thereon, and if insufficient to pay such debt to take testimony upon other items of the assignee's account, but the decree did not state the aggregate of the moneys charged, nor order payment—*Held,* that it was not a final money decree.

2. To entitle a decree to rank as a judgment against the assets of one deceased, it must have ascertained a definite sum of money to be due, and ordered its payment; it must be a decree upon which an execution could have been issued. *Cases considered.*

---

See *Farrar* v. *Farley,* 3 *S. C.* 11.

Before PRESSLEY, J., Laurens, June, 1879.

S. S. Farrar & Bros. obtained a judgment against Joseph Crews, April 17th, 1855, for $2417.51, besides interest and costs. But before this judgment was obtained, Crews had made, in January and April, 1855, five assignments for the benefit of his creditors—two to Lewis Dial, two to W. R. Farley and one to Farley & Dial; and, under the last assignment, whatever balance was left after paying certain preferred debts, was made applicable to all his other creditors in full or *pro rata*, who should execute a release of any balance that might be due them. The Farrars came in and accepted its terms. In April, 1859, S. S. Farrar & Bros. filed their bill in the court of equity for Laurens district, against Farley, Crews and Dial, for an account by Farley & Dial of their administration of their trust. The bill stated the amount of the Farrars judgment, with an accurate statement of the interest, and that it remained unsatisfied. Dial and Crews, in their answer, admitted that complainants were judgment creditors for the amount stated in their bill, but denied having funds to pay with. In June, 1859, all matters of account were referred by Chancellor Johnstone to the commissioner. The commissioner reported, and his report, with exceptions by Farrar Bros., and Crews and Dial, came up before Carroll, Chancellor, in June, 1868. Some of the exceptions were sustained and some overruled, and the commissioner was ordered to reform his report as directed; and an inquiry, was ordered, if, upon the calculation of interest and the addition of items ordered by the decree, it was found that there was not enough in Dial's hands to pay the Farrars, and also another small judgment held by one Penn. Such further inquiry was never made, because it was found to be unnecessary, as the calculations made under the directions of the decree showed a balance in Dial's hands more than sufficient to pay these two claims. An appeal was taken by Dial to the Supreme Court, pending which Dial died. See 3 *S. C.* 11. Upon the dismissal of the appeal, Dial's administratrix, Minerva Dial, was brought in by plaintiffs, and judgment entered up against her as administratrix of Dial, in October, 1877.

Meantime an action had been commenced by Patillo Garrett, administrator, against Minerva Dial, administratrix, and others, for a settlement of Lewis Dial's estate. Creditors were called in,

and the attorneys, who represented Farrar Bros. in the first suit, presented the judgment of October, 1877, as a claim against the estate. It was held by the referee to be a simple contract debt against Dial, and this report was confirmed by the Circuit judge, all parties consenting.

Subsequently, J. C. Farrar and C. D. Farrar, survivors of S. S. Farrar & Bros., filed their petition in the case of Garrett *v.* Dial, alleging that decree of Chancellor Carroll, rendered in 1868, was a final judgment, and should be paid as such out of the assets of Dial's estate; that his lands had been sold under orders in this cause, but that the purchase money was still in the custody of the court—that they had never been parties to this cause, nor had notice of its pendency. Upon this petition, duly sworn to, Hon. W. H. Wallace, judge of Seventh Circuit, granted an order requiring the parties to the record to show cause why the prayer of the petition should not be granted, and restraining the clerk meantime from paying out the funds in his hands. The answer to this petition insisted that the decree of 1868 was not a final judgment; and if it was, that petitioners were estopped by the entry of the judgment of October, 1877, and by the judgment already rendered in this cause.

The decree of the Circuit judge is as follows:

Judge Wallace hitherto, with consent of Simpson & Holmes, as representing Farrar & Bros., ordered a distribution of the funds in this case, then in the custody of the court. That order is now objected to by Farrar & Bros., who came before the court on petition and affidavit, setting forth misunderstanding between them and said attorneys. I think it established that such misunderstanding existed, and that as to such of the fund as remains in court, it should be distributed as if such order had not been passed.

The claim of petitioners presents a very difficult question, on which I find no satisfactory authority, and therefore decide it only because I must.

Joseph Crews assigned his property to Lewis Dial and W. R. Farley for payment of his debts. He owed Farrar & Bros., and in April, 1857, they filed a bill to compel payment against the said assignees. The decree in the case was filed by Chancellor

Carroll, in 1868, and affirmed by the appeal court in 1871, but in October, 1870, Lewis Dial died. With the previous report of McGowan, then commissioner in equity, that decree fixed the amount of the debt of Farrar & Bros., and one to T. S. & J. Penn. It settles that all other claims under the assignments had been settled, and that Dial had in hands applicable to the said two unpaid debts, the sums of $2087 profit on land re-sold by him, $719, the price of a slave Alfred, and $120 for his hire before the sale. The opinion of the said Chancellor was ordered to stand as the decree of the court, and Dial was condemned to pay the costs of the case. On the other points the case was re-committed to the said commissioner, and he was ordered to pursue other inquiries as to the liabilities of Dial, in case the assets in his hands, as settled by said decree, should not be sufficient to pay the said debts. Subsequently the commissioner amended his report, and, finding the assets sufficient, did not pursue the inquiries conditionally directed in the decree. The amended report was not acted on by the court during the lifetime of Dial. After his death, on amended proceedings, it was reported on by Silas Johnstone, referee, and confirmed by the court, and thereupon judgment was entered for Farrar & Bros. on October 2d, 1877, for $6220.88 debt, and $285 costs.

Farrar & Bros. now claim that under this decree of Chancellor Carroll their debt, though not a lien, yet ranks as a judgment against Dial's estate under the act of 1879.

I hold under the case of *Edwards* v. *Sanders*, 6 *S. C.* 316, that a decree, though not a lien, may rank as a judgment under the said act.

Furthermore, that to the extent of $285, the costs of the case, and $2926, the aggregate of the items decided by Chancellor Carroll, with interest from July 5th, 1856, his said decree is one for the payment of money, and ranks as a judgment against Dial's estate, but that it does not so rank in respect of the additional amounts found due by Dial in the commissioner's amended report.

It is therefore adjudged that the former order for distribution of such fund be rescinded, and the same be distributed, in so far

R

as any still remains, in accordance with this decree, ranking the debt of Farrar & Bros. to the extent aforesaid as a judgment.

From this decree the respondents appealed to this court.

*Messrs. Pope & Watts*, for appellants, cited 1 *McC. Ch.* 32 and 1 *Daniell's Pr. & Pl.* 1199.

*Mr. R. W. Shand*, contra, contended that as the debt was stated in the bill and admitted in the answer, the only issue was, how much of the assigned estate was in Dial's hands applicable to this debt; and that when the decree of 1868 fixed the items in Dial's hands and directed interest to be charged, it, in effect, said that there was money enough in Dial's hands to pay this debt, and so the decree took rank as a final judgment for the amount charged in the bill and admitted by answer.

March 24th, 1880. The opinion of the court was delivered by

McIVER, A. J. The questions raised by this appeal are:

*First.* Whether the decree of Chancellor Carroll, filed in 1868, was entitled to rank as a judgment in the administration of the assets of Dial.

*Second.* If so, are not the plaintiffs estopped from claiming such effect for it, by reason of the action of their attorneys in having it merged into and made a part of the judgment recovered in 1877, after the death of Dial.

*Third.* If that be not so, are not the plaintiffs estopped from setting it up as a judgment recovered prior to the death of the intestate, by the order passed by Judge Wallace in July, 1878?

Since the case of *Woddrop* v. *Ward*, 3 *Desaus.* 203, it has not been doubted that in this state decrees in equity rank as judgments in the administration of assets of the estates of deceased persons. Such was the law in England, even when decrees acted only *in personam* and were enforceable only by process of contempt and by writ of sequestration. 2 *Wms. on Ex'rs* 731, (2d *Am. ed.*); *Morrice* v. *Bank of England*, 4 *Brown, P. C.* 287. It was not, however, every decree which was entitled to that rank, for, as is said in the next page of Williams on Ex-

-ecutors : "If a decree be not conclusive of the matters in ques-
tion, as if it be merely to account and do not ascertain the sum
to be paid, it is analogous to a judgment *quod computet* at law,
and that is no complete judgment till the account be stated."
*Smith* v. *Eyles*, 2 *Atk.* 385. Such a decree is like an interlocu-
tory judgment at law which has been held, in the case of
*McIntosh* v. *Wright*, *Rich. Eq.* 385, not to be such a judgment
as is contemplated by the act of 1789. *Gen. Stat.* 457. To
give it such a character, it must be a final decree, and by that
we understand (speaking of a money decree) such a decree as not
only ascertains that a definite sum of money is due from one
party to another, but orders the payment of the same. It must
be such a decree as will authorize the issuing of an execution for its
enforcement. As is said in *Haskell* v. *Raoul*, 1 *McC. Ch.* 32, a
decretal order upon which an execution may be taken out is a
final decree. The Supreme Court of the United States, in the
case of *Forgay* v. *Conrad*, 6 *How.* 201, have declared the rule
to be (the italics being ours) : " When the decree decides the
right to the property in contest, and directs it to be delivered up
by the defendant to the complainant, or directs it to be sold, *or
directs the defendant to pay a certain sum of money to the com-
plainant, and the complainant is entitled to have such decree
carried immediately into execution*, the decree must be regarded as
a final one to that extent, and authorizes an appeal to this court,
although so much of the bill is retained in the Circuit Court as
is necessary for the purpose of adjusting by a further decree the
accounts between the parties pursuant to the decree passed."
This rule is re-affirmed in the same language in the more recent
case of *Thomson* v. *Dean*, 7 *Wall.* 342.

The inquiry, therefore, is whether the decree of Chancellor
Carroll was such a decree as authorized the issuing of an execu-
tion for its enforcement. We do not think so. No definite sum
was ascertained to be due by Dial to the plaintiff, and certainly
there was no order for the payment to them of such sum. The
original report of the commissioner is not before us, and it is not
stated that in such report he recommended that any particular
sum of money should be paid to the plaintiffs by Dial ; and
even if he had made such recommendation there is no confirma-

tion of the report, but, on the contray, it is recommitted for reformation in the several particulars indicated, and no order for the payment of any particular sum of money by Dial to the plaintiffs. We do not see, therefore, how, without some further action on the part of the court, any execution could have been issued to enforce the decree; for, in order to do so, as the law then stood, it would have been necessary to enroll the decree, and to do this it would have been necessary to show some decree of the court, not only ascertaining that a definite sum of money was due by one party to the other, but also an order for the payment of the same. It may be, as was argued by the counsel for the respondents, that the decree contained within itself the data from which the amount due could have been ascertained by a mere arithmetical calculation, yet there still is an entire absence of any order or decree for the payment of such amount, and without such order there is no such judgment as would authorize the issuing of an execution to enforce the payment. It would be like a case under the old practice, wherein an action on a note to which no defence was interposed, though the record would furnish the data from which the amount due could be ascertained by a mere arithmetical calculation, yet, still, until that was done, in the mode prescribed by law, there could be no final judgment by the judge's order referring it to the clerk to assess the damages, but the judgment would continue to be a merely interlocutory judgment and not entitled to rank as a judgment in the administration of the assets of an intestate's estate. So in this case Chancellor Carroll might have had before him the data by which he could, by a simple calculation, ascertain what was due from the defendant to the plaintiffs, but the fact nevertheless remains that he did not do it, for reasons which are apparent in the decree itself, and did not decree any specific amount to be paid by the defendant to the plaintiffs. In this respect the case differs from that of *Sullivan* v. *Thomas*, 3 *S. C.* 531, for there the Circuit judge, in the exercise of his chancery jurisdiction, after having ascertained the specific amounts due to the several parties, concludes with an order for the payment of the said sums of money to the said parties. The case of *Stovall* v. *Banks*, 10 *Wall.* 583, to which our attention has been especially invited

by the counsel for the respondents, does not in anywise conflict with the views hereinbefore expressed, for in that case the decree *not only determined the sum due to each of the complainants and directed its payment, awarding execution therefor, but the execution was actually issued.* The case of *Atherton* v. *Fowler*, 91 *U. S.* 143, which is also relied upon, was a case in which the Supreme Court of California reversed the judgment of the inferior court and directed a modification thereof as to the amount of damages, but without permitting further proceedings below, if the defendants consented to the modification, and the record showed that such consent was given before the writ of error was taken out. It was, therefore, very properly held that the objection that this was not a final judgment because the case was remanded to the inferior court for further proceedings, was not well taken, because it was not true in point of fact that the case was remanded for further proceedings by the court below, but only for the purpose of enabling the defendants to consent to a modification of the judgment in respect to the amount of damages. When such consent was given, as was done before the writ of error was taken out, there was a final termination of the case, and there was nothing further for the court to do, and the judgment was, therefore, a final judgment. But if the consent had not been given, or until it was given, there was no judgment, either final or otherwise. It was, practically, therefore, nothing more than an order for a new trial, *nisi* the plaintiff would remit a part of the damages recovered; upon such *remittitur* being entered, the judgment would become a final one, as nothing would be left for the court to do. But in the case under consideration the report of the commissioner was recommitted for the purpose of enabling that officer to reform the account in accordance with the directions contained in the decree, so that it might form the basis of a final judgment, and until such reformation was made and reported to the court, there was nothing upon which to base a final judgment ascertaining a certain definite amount to be due by the one party to the other, and directing its payment.

Under this view of the case, the other questions presented by the appeal cannot arise and need not be considered.

The judgment of the Circuit Court is set aside, and the case remanded for further proceedings in accordance with the views herein expressed.

WILLARD, C. J., concurred.